FILED
CLERK
4:02 pm, Mar 08, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CARLOS J. RIVERA,

        Plaintiff,

    -against-

COUNTY OF SUFFOLK,

        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

21-CV-5439 (GRB)

**GARY R. BROWN, United States District Judge**:

In this action, plaintiff Carlos J. Rivera brings claims against the defendant County of Suffolk for employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C.A. § 4311(a); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2000e-17; and the New York State Human Rights Law, N.Y. Exec. Law ("NYSHRL"), §§ 290-301. Presently before the Court is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket Entry ("DE") 25.

*Factual Background*

The allegations of the amended complaint include the following: for approximately 15 years, plaintiff, a military veteran of Hispanic descent, worked as a Spanish-speaking Investigator for the Child Protective Services division of Suffolk County's Department of Social

1

Services, who was, according to the complaint, perceived as an individual with a disability as a result of his military service. *See generally* DE 19.

As a result of these factors, plaintiff alleges, the County unreasonably demanded that plaintiff provide mental health records and submit to a mental health examination to determine his continued fitness for duty. *Id.* ¶¶ 8-16. Plaintiff agreed to meet with a psychologist but refused to provide the requested medical records, leading to his termination. *Id.* ¶¶ 21- 22. Plaintiff also alleges prior differential treatment, including inconvenient assignments. *Id*. ¶¶ 28- 29.

During his employment, plaintiff received commendations for superior work performance. *Id.* ¶ 59. In May 2017, plaintiff was attacked and injured during the investigation of child abuse allegations by an angry parent who was later convicted of assault. *Id*. ¶¶ 61, 63. In October 2018, following his recuperation, plaintiff was transferred to the Abuse Team. *Id*. ¶¶ 62, 65. He contends that he was filling the role of a Senior Investigative caseworker, which has a higher rate of pay, but he did not receive the higher title or increase in salary. *Id*. ¶ 65. He requested a "desk audit" of his position with his supervisor, a procedure designed to detect and rectify errors in position and pay grade, and was threatened that he would be transferred out of the Abuse Team if he pursued this request. *Id*. ¶¶ 66-69. Plaintiff pursued his request and was transferred from the Abuse Team to "Team 72"in June 2019. *Id*. ¶ 72. His transfer to "Team 72" routinely involved assignments on the East End of Long Island, increasing his commute by several hours. *Id*. ¶¶ 72-73. At his request, in August 2019, he was transferred to Team 62, thereby eliminating the extra commute. *Id*. ¶ 74. However, his relationship with supervisors continued to deteriorate. *Id*. ¶¶ 75-104.

In February 2020, the complaint alleges, both plaintiff and his then-pregnant wife were "experiencing severe stress because of the circumstances that [p]laintiff was experiencing at work." *Id*. ¶¶ 110-11. By the end of that month, plaintiff was suspended and ordered to attend a "fitness for duty" psychological evaluation. *Id*. ¶¶ 112-13. The examining psychologist, Dr. Feldman, requested plaintiff's medical records, including mental health records, before "clearing" him to return to work. *Id*. ¶ 115. Plaintiff refused, leading to charges of insubordination, misconduct and incompetence. *Id*. ¶¶ 116-19. The County twice more directed plaintiff to provide medical records, including any mental health records, but plaintiff again refused to comply and was again charged with misconduct and incompetence. *Id*. ¶¶ 121-23. Finally, on March 26, 2021, defendant terminated plaintiff's employment pursuant to the charges because he refused to supply the requested medical records as a condition of continued employment. *Id*. ¶ 125.

Based on these allegations, the complaint purports to set forth claims under the ADA and Rehabilitation Act, USERRA, Title VII and the NYSHRL. The County moves to dismiss on various grounds. DE 25.

*USERRA*

Because this case was originally filed against other defendants, including DSS and a group of state employees, this Court ruled that it lacked jurisdiction as to some of plaintiff's USERRA claims because of an unusual provision contained in that statute. As this Court discussed in *Veronko v. Suffolk Cnty.*, 561 F. Supp. 3d 341, 342 (E.D.N.Y. 2021), "'lawsuits brought under USERRA by an individual against a state agency . . . may not proceed in federal courts; they may be litigated only in state courts.'" *Id.* (quoting *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 23 (2d Cir. 2017)); *see also Townsend v. Univ. of Alaska*, 543 F.3d 478,

3

486 (9th Cir. 2008) (USERRA "does not create a cause of action against individual state employees even if they exercise supervisory responsibility").  However, the amended complaint sets forth claims only against Suffolk County.  DE 19.  Thus, whether the Court has jurisdiction over claims against Suffolk is governed, as counsel for the County diligently and properly noted, by a curious exception to USERRA's unusual jurisdictional provision, to wit: 38 U.S.C. § 4323(i), which provides that "the term 'private employer' includes a political subdivision of a State."  *Sandoval v. City of Chicago, Illinois*, 560 F.3d 703, 704 (7th Cir. 2009) ("§ 4323(i) defines 'private employer' to include a subdivision of a state for the purpose of § 4323. [ ] Chicago is a 'political subdivision' of Illinois, and subject-matter jurisdiction is established.")  Thus, this Court has jurisdiction over USERRA claims against Suffolk County, a political subdivision of New York State.[1]

      Defendant contends that plaintiff has failed to allege a plausible claim under USERRA.  Plaintiff bases his USERRA claims principally on the assertion that defendant "perceived and/or regarded Plaintiff as suffering from Post-Traumatic Stress Syndrome (PTSD), or paranoia, or anger management issues, or another impairment or disability related in whole or in part to Plaintiff's prior military service and veteran status."  DE 19 ¶ 18.  However, "[f]ederal courts have held that discrimination based on a service-related disability, as opposed to military status, does not form a cause of action under USERRA."  *Hughes v. City of New York*, No. 20-CV-3341 (AMD)(RLM), 2021 WL 7542440, at *6 (E.D.N.Y. 2021) (collecting cases).

      The only remaining allegation is that one supervisor compared plaintiff to an "active shooter," DE 19, ¶ 103, but that phrase is not specific to military personnel, drawing its meaning,

---

[1] To the extent the opinion in *Veronko*, 561 F. Supp. 3d at 342, dismissed claims against the County, it was wrongly decided.

instead, from civilian trap shooting competitions. *See* Fortin, J., "What Does 'Active Shooter' Really Mean?, *The New York Times,* May 5, 2021 ("According to the F.B.I., 'an active shooter is an individual actively engaged in killing or attempting to kill people in a populated area.'"). Thus, plaintiff has failed to allege any facts demonstrating any nexus between his alleged treatment and termination and his military service. Accordingly, his USERRA claims must be dismissed.

*ADA/Rehabilitation Act/Title VII/NYSHRL*

*Exhaustion*

The County argues that plaintiff did not receive a Right to Sue letter from the EEOC prior to filing this action on July 2, 2021 and therefore his claims under the ADA and Title VII should be dismissed. DE 25-3 at 12. In response, plaintiff submits a copy of the Right to Sue letter dated July 2, 2021. DE 26-3 at 159. Thus, the County's exhaustion argument proves meritless.[2]

*Failure to State a Claim*

Plaintiff's ADA, Rehabilitation Act, Title VII and NYSHRL claims rest on plaintiff's termination arising from his failure to provide medical records in connection with the fitness for

---

[2] Of course, had plaintiff's counsel complied with this Court's directive at the premotion conference to provide this letter at an earlier juncture, unneeded motion practice could have been avoided. Nevertheless, defendant argues that plaintiff's Title VII, ADA and Rehabilitation claims are time-barred because the EEOC issued the Right to Sue letter one day before the expiration of the 180-day administrative review period contemplated by the statute. DE 27-2 at 1-2. The Second Circuit, however, has not yet decided the issue. *See Hankins v. Lyght*, 441 F.3d 96, 101 (2d Cir. 2006) ("We have not decided whether the regulation allowing early issuance of right-to-sue notices, 29 C.F.R. §1601.28(a)(2), is a permissible construction of Section 2000e-5"). And district courts in this Circuit are split on the propriety of early right-to-sue letters. *See Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 382-83 (E.D.N.Y. 2000) (collecting cases). Here, plaintiff was issued an "early" notice of right-to-sue, which was granted after "less than 180 days" had passed since the filing of the charge because the agency determined it was "unlikely that the EEOC [would] be able to complete its administrative processing within 180 days from the filing of this charge." DE 26-3. However, since the Second Circuit has held (without deciding the ultimate question) that the validity of an early right-to-sue notice "is not jurisdictional in nature," *Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625 (2d Cir. 2000), and the EEOC determined that it was unlikely to complete its administrative processing within 180 days, *see Commodari*, 89 F. Supp. 2d at 380-83 (recognizing EEOC's backlog may precluded investigations and conciliations presumed within 180 days to justify early Right to Sue notices), the Court concludes that the issuance an early Right to Sue letter does not preclude review.

duty evaluation.  The County has plainly established its authority, under appropriate circumstances, to request a fitness for duty examination under New York Civil Service Law § 72, which presumably includes a related request for medical records.  *See, e.g., Clark v. Dominique*, 798 F. Supp. 2d 390, 404 (N.D.N.Y. 2011).  However, plaintiff alleges that these actions were taken (1) discriminatorily based upon the perception that he suffered from a disability[3] and/or (2) in retaliation for objections he lodged during his employment with the County.  *See, e.g.,* DE 19 ¶ 17 (differential treatment resulting from perceived mental disability); *id*. ¶ 86 (plaintiff arranging for union representative to attend meeting); *id*. ¶ 90 (plaintiff's email to Commissioner of Social Services claiming discrimination); *id*. ¶ 104 (plaintiff threatening legal action).

This case turns, though, on plaintiff's refusal to submit medical records, which was the action that led to his termination.  The complaint is predicated on the somewhat dubious claim that plaintiff had the "right" to refuse to provide the requested records requested in connection with the examination.  DE 19 ¶ 116 ("Plaintiff believed Dr. Feldman's request for his medical records, including any mental health records, to be an unwarranted invasion of personal privacy by his employer.")

The County cites several cases, including *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011), holding that a fitness for duty examination does not constitute an adverse employment action.  Yet, for obvious reasons, each of the decisions relied upon by the County arose in the summary judgment context.  Here, the question of whether the fitness for duty examination and request for records were warranted or may have constituted discrimination must

---

[3] To the extent this allegation rests on USERRA claims, the dismissal of those claims resolves these matters.  As to plaintiff's conclusory statements concerning his race or national origin, the complaint is devoid of any factual allegations that would support such a conclusion. The only reasonably articulated basis for discrimination would be the perception that the plaintiff suffered from a disability.

be made on a more complete factual record. Thus, the question cannot be resolved on a motion to dismiss.

*Time Bar Arguments*

Though the record of administrative proceedings is somewhat tangled, the County argues that all events recounted in the complaint other than his termination are not actionable, having occurred before either March 10, 2020 or July 8, 2020. DE 27-2 at 4. However, on this motion, the County has submitted the referral for psychological examination, dated March 2, 2020, which cites, as a basis for the fitness for duty exam (which ultimately led to his termination), incidents dating back to March 2019. DE 27-1. Thus, even if the County is correct that certain events may be time barred for substantive liability purposes, the medical examination that led to plaintiff's termination was predicated – by defendant's choice -- upon a lengthy factual record, rendering events occurring during this time period relevant for evidentiary purposes. Therefore, the Court defers ruling on the time bar issue until presented with a more complete factual record.[4]

*Conclusion*

Based on the foregoing, the County's motion to dismiss is GRANTED as to plaintiff's USERRA claims and to claims of race or national origin discrimination under Title VII and the NYSHRL. The motion is DENIED as to plaintiff's claim of discrimination and retaliation relating to perceived disability under the ADA, Rehabilitation Act, Title VII and the NYSHRL.

As noted, however, the remaining questions are quite narrow. Counsel are directed to meet and confer to determine whether any targeted discovery is required on the remaining issues,

---

[4] The County made, but seemingly withdrew, a motion to dismiss the NYSHRL claim based on plaintiff's failure to independently establish diversity jurisdiction. Given that several federal claims remain, this aspect of defendant's motion is moot.

and submit a joint proposed briefing schedule for the submission of a summary judgment motion.

**SO ORDERED.**

Dated: Central Islip, New York
      March 8, 2023

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge