UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CARLOS J. RIVERA,

                                Plaintiff,

  -against-

COUNTY OF SUFFOLK,

                               Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**

Civil Action
No. 21-5439 (GRB)(ST)

**GARY R. BROWN, United States District Judge**:

Presently before this Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Docket Entries ("DE") 80, 81-3. Plaintiff Carlos Rivera alleges that defendant Suffolk County violated the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and the New York State Human Rights Law ("NYSHRL") by engaging in discrimination and retaliation. For the reasons set forth herein, defendant's motion is GRANTED and plaintiff's motion is DENIED.

*Factual Background*

Plaintiff was a caseworker in the Child Protection and Preventative Bureau of Suffolk County's Department of Social Services ("DSS"). DE 70-1 ¶ 1. Plaintiff's job required that he timely investigate cases of alleged child abuse and determine whether the allegations were valid. *Id.* ¶ 18.

In February of 2020, Jodi Tomlinson, the Assistant Director of Child Protective Services, and one of plaintiff's superiors, became concerned about whether plaintiff was sufficiently investigating two overdue cases of child abuse. *Id.* ¶ 25. A case is considered "overdue" if the

1

caseworker has not completed the investigation and determined if the report of child abuse is credible within 60 days of starting the investigation. *Id.* ¶ 18. Concerned about the quality and quantity of contact between plaintiff and the children in those two cases, Tomlinson reached out to Annette Mahoney-Cross, DSS's Director of Child Protective Services, and suggested opening a new report so that DSS could monitor the children. *Id.* 70-1 ¶ 26. Tomlinson helped to generate a new report on February 21, 2020, which enabled DSS to assess the safety of the children. *Id.* ¶ 27-28. Caseworkers were generally not consulted when new reports were generated. *Id.* ¶ 29.

On February 24, plaintiff emailed Tomlinson and Mahoney-Cross, requesting to review his caseload in light of the two new reports. *Id.* ¶ 30. Mahoney-Cross explained that she decided to generate the new reports and that Tomlinson and John Lomascolo, plaintiff's direct supervisor, would meet with plaintiff. *Id.* ¶ 33. In response, plaintiff conveyed his displeasure at not being consulted, accused Mahoney-Cross of "discrimination," and insisted that he would not meet with Tomlinson and Lomascolo absent legal representation. DE 74-17.

On February 25, plaintiff refused to meet with Lomascolo or Mahoney-Cross even though a union representative was available to assist him. DE 70-1 ¶¶ 36, 39-40. Instead, plaintiff yelled at Mahoney-Cross that he would not meet without legal representation, he was facing discrimination, and he was going to call 911. *Id.* ¶ 43. After the exchange, Mahoney-Cross emailed Mark Clavin, her superior and DSS's Administrator of the Family & Children's Services Division, noting that plaintiff "became both verbally and physically aggressive" and that his behavior made her and her team "upset." DE 74-20. Mahoney-Cross expressed concern that plaintiff's "insubordination in the presence of co-workers [would] empower co-workers to follow suit" and contemplated filing her own complaint with the County's Office of Labor

2

Relations if DSS did nothing to remedy her safety concerns regarding plaintiff's conduct.  DE 74-36.

The next day, on February 26, Mark Clavin, the Administrator for DSS's Family & Children's Services Division, received an anonymous email "on behalf of [the author] and a few co-workers regaring [sic] caseworker, Carlos Rivera."  DE 74-6.  The author stated that "[a] lot of us do not feel safe around [plaintiff]" and cited a "recent incident with him in the office" that "put a lot of us on edge."  *Id.*  The author described feeling unsafe around plaintiff and "expressed serious concerns about his mental state," writing that "it is only a matter of time before he does something stupid."  *Id.*  "We beg you to please look into this because we don't think he is ok," the email concluded.  *Id.*

As a result of the concerns expressed by Mahoney-Cross and the anonymous employee, DSS and the Office of Labor Relations referred plaintiff for a psychological medical evaluation, known as a fitness for duty evaluation, to be conducted by the Suffolk County Civil Service.  DE 74-4.  At the recommendation of the Office of Labor Relations, DSS suspended plaintiff with pay pending the outcome of an investigation into the February 25 events.  *Id.*

On March 3, the County's Department of Health Services sent plaintiff notice of his fitness for duty evaluation on March 12 with Dr. Daryl Feldman, an independent contractor.  DE 70-1 ¶ 61.  The letter directed plaintiff to bring medical and psychological documentation as well as any diagnostic tests.  *Id.* ¶ 62.  Even though plaintiff appeared for his appointment with Dr. Feldman, the latter could not complete his evaluation, because plaintiff did not provide the medical information the County requested in its March 3 letter.  *Id.* ¶ 63.

3

On July 14, 2020, DSS charged plaintiff with (1) misconduct for refusing to meet with Lomascolo or Mahoney-Cross and failing to provide medical documentation to Dr. Feldman and (2) incompetence for inability to perform job duties as a result of failing to provide the required medical documentation. DE 74-29 at 1. As a result of these charges, an independent arbitrator held a hearing in October of 2020, in which plaintiff and defendant provided evidence. *See* DE 74-8.

On November 12, 2020, DSS sent plaintiff a letter requesting that he provide his treating professionals with a release for disclosure of medical records to Dr. Feldman for the purpose of the fitness for duty evaluation. DE 70-1 ¶ 67. In response, plaintiff sent Dr. Feldman an email saying that he was unable to get a doctor's letter given that he did not have a history of violence. *Id.* ¶ 68. DSS sent a follow-up letter to plaintiff requesting that he provide Dr. Feldman with a record of medical history that might aid in determining his psychological fitness for duty, specifying that Dr. Feldman needed records of any prior psychological treatment. *Id.* ¶ 69. If no such records existed, plaintiff needed to provide a letter stating that fact. *Id.* Plaintiff had until December 10. *Id.*

Plaintiff did not provide the required documentation, nor did he provide a letter stating that no record of psychological treatment exists. *Id.* ¶ 70. As a result, Dr. Feldman could not complete the fitness for duty evaluation. *Id.* On December 15, DSS added an additional misconduct charge against plaintiff for insubordination due to failure to provide medical documentation to Dr. Feldman. DE 74-29 at 14.

On March 25, 2021, in a written opinion, the independent arbitrator found plaintiff guilty of incompetence and insubordination and concluded that defendant had just cause to terminate plaintiff. DE 74-24 at 26.

On September 30, 2021 plaintiff sued defendant, DSS, and several individual defendants alleging violations of the ADA, Rehabilitation Act, NYSHRL, 42 U.S.C. § 1981 ("§ 1981"), the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII").  *See* DE 1.  The Court dismissed plaintiff's § 1981 claim, as well as all claims against DSS and the individual defendants.  DE 18.  Plaintiff filed an amended complaint.  *See* DE 19.  The Court dismissed plaintiff's discrimination claims pertaining to military status under USERRA and race or national origin under Title VII and NYSHRL.  *See* DE 29.  The ADA, Rehabilitation Act, and NYSHRL disability claims remain. Specifically, the two issues at this stage are narrow and concern: (1) whether defendant intentionally discriminated against plaintiff by requesting a fitness for duty examination; and (2) whether defendant retaliated against plaintiff by terminating him after plaintiff refused to provide medical records.  *Id.* at 6.

***Discussion***

*Legal Standard*

A motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Disability Discrimination*

To establish discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable

5

accommodation; and (4) he suffered adverse employment action because of his disability." *Jarell v. Hosp. for Special Care*, 626 Fed.Appx. 308, 311 (2d Cir. 2015). Intentional discrimination claims brought under the Rehabilitation Act and the NYSHRL are analyzed under the same standard as ADA claims. *See Rodriguez v. City of New York*, 197 F.3d 611, 617 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem."); *McDonnell v. Schindler Elevator Corp.*, 618 Fed.Appx. 697, 698 (2d Cir. 2015) ("A similar standard applies" to discrimination claims brought under the NYSHRL and the ADA). Disability discrimination claims are subject to a burden-shifting analysis, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which the plaintiff must establish a prima facie case of discrimination; the burden then shifts to the employer to offer a legitimate non-discriminatory reason for the adverse action; and, if the employer meets its burden, the plaintiff then bears the burden of producing evidence that the proffered reason for the adverse action is a pretext, *Farina v. Branford Bd. of Educ.*, 458 Fed. Appx. 13, 15 (2d Cir. 2011).

The ADA provides that an employer may "not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "[E]nsuring that the workplace is safe and secure" is a business necessity. *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003). Importantly, a fitness for duty referral is not an ADA violation when triggered by an employer's safety concerns. *See Krasner v. City of New York*, 580 Fed. App'x. 1, 3 (2d Cir. 2014) ("The ADA does not require an employer to retain a potentially violent employee because such a requirement would place the employer on a razor's

6

edge – in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone."); *Rivera v. Smith*, No. 07-CV-3246 (BSJ)(AJP), 2009 WL 124968, at *4 (S.D.N.Y. Jan. 20, 2009), *aff'd*, 375 F. App'x 117 (2d Cir. 2010) (holding that an employer's request for a plaintiff to undertake a psychiatric examination following reports from another employee that the plaintiff was harassing and stalking did not violate the ADA, because the employer was trying to promote workplace safety). The salient inquiry is not whether an employee *actually* posed a threat, but whether the employer reasonably believed the employee posed a threat. *See Cerwinski v. Ins. Servs. Off.*, No. 95-CV-1766 (JSM), 1996 WL 56988 (S.D.N.Y. Oct. 3, 1996), *aff'd sub nom. Cerwinski v. Ins. Servs. Off., Inc.*, 112 F.3d 503 (2d Cir. 1997) ("As long as this [safety concern] is in fact the reason that [plaintiff] was terminated, then no matter … how high handed [defendant's] decisional process, no matter how mistaken the firm's managers, [plaintiff] cannot proceed with her claims.").

Here, the facts undisputably show that defendant had a valid business reason to inquire into plaintiff's psychological condition. Rather than meeting with his supervisors as they requested on February 25, plaintiff screamed at Mahoney-Cross accusing her of discriminating against him and yelling that he would call 911. DE 70-1 ¶ 43. Because plaintiff was acting "verbally and physically aggressive," his behavior made Mahoney-Cross and her team "upset." DE 74-20. The evidence indicates that Mahoney-Cross was considering filing a complaint with the Office of Labor Relations if DSS did not ameliorate her safety concerns arising out of plaintiff's conduct. DE 74-36. There was also an anonymous email, ostensibly from one of plaintiff's colleagues, expressing concern about the safety threat plaintiff posed. DE 74-6. Regardless of the author's identity, the email, combined with plaintiff's actions toward Mahoney-

7

Cross, could reasonably have convinced defendant that plaintiff's mental state needed evaluation in order to ensure that plaintiff's colleagues could work in a safe environment.

Accordingly, defendant's motion for summary judgment on plaintiff's disability discrimination claim is granted and plaintiff's motion for summary judgment on this claim is denied.

*Retaliation*

To support a retaliation claim, a plaintiff must show "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Proving retaliation under the Rehabilitation Act, *see Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 148-49 (2d Cir. 2002), and the NYSHRL, *see Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000), requires this same analysis.

Here, plaintiff was terminated after he refused to provide medical documentation to defendant as part of the fitness for duty examination. Plaintiff's refusal was not protected by the ADA given that defendant's motive for the referral was to see whether plaintiff posed a danger to his colleagues. *See Conroy*, 333 F.3d at 97. By refusing to acquiesce to defendant's request to undertake the fitness for duty examination, plaintiff was unable to show that he was fit to perform his job duties as a caseworker, DE 74-29 at 24, and "engaged in a particularly egregious example of insubordination," *id.* at 25. Because plaintiff's refusal to provide his medical records is not protected by the ADA, defendant did not engage in retaliation by terminating him.

8

Accordingly, defendant's summary judgment motion on plaintiff's retaliation claim is granted and plaintiff's summary judgment motion is denied.

*Conclusion*

For the reasons set forth herein, the Court grants defendant's motion for summary judgment in its entirety.  The Court denies plaintiff's motion for summary judgment.

**SO ORDERED.**

Dated: Central Islip, New York
      September 4, 2025

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge
